IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

PHOEBE LARSON,

    Plaintiff,

v.

WOODWARD, INC., a Colorado corporation,

    Defendant.

## COMPLAINT AND JURY DEMAND

The Plaintiff, Phoebe Larson ("Larson"), by and through her undersigned attorneys at HKM Employment Attorneys LLP, pursuant to the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), and Colorado's Equal Pay for Equal Work Act, C.R.S. § 8-5-101 *et seq.* ("CEPEWA"), as her Complaint and Jury Demand against the Defendant, Woodward, Inc. ("WWD"), states as follows:

## NATURE OF THE CASE

1. Larson is a 65-year-old woman who was employed by WWD for more than 21 years, during which time she performed her job duties diligently and successfully, and saved the company millions of dollars.

2. During her employment, WWD violated Larson's rights under the EPA and the CEPEWA by paying her less than similarly-situated, younger male employees by: (1) keeping her at an "incentive level" that was lower than her comparators; (2) providing her with stock options at a level that was hundreds of thousands of dollars below that of her comparators; (3) paying her a salary that was approximately $20,000.00 per year less than her comparators; and (4) paying her

1

bonuses that were less than the bonuses paid to younger male employees under similar circumstances.

3. Larson seeks back wages, liquidated damages, reasonable attorney's fees and litigation costs for the Defendant's violations of the EPA and the CEPEWA. *See* 29 U.S.C. § 216(b); C.R.S. § 8-5-104(2).[1]

## PARTIES

4. The Plaintiff is a Colorado resident who resides at 2820 William Neal Parkway, Fort Collins, Colorado 80505. She was employed by the Defendant, WWD, from 1999 until July of 2021.

5. The Defendant is a Colorado corporation whose principal office is located at 1081 Woodward Way, Fort Collins, Colorado 80525.

## JURISDICTION AND VENUE

6. The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

7. This Court has subject matter jurisdiction over the Plaintiff's claims under the EPA pursuant to 28 U.S.C. 1331 because those claims arise under federal law.

8. This Court may exercise supplemental jurisdiction over the Plaintiff's CEPWA claims because those claims are so related to the Plaintiff's EPA claims that they form part of the

---

[1] Larson has also filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD"), alleging that WWD's actions violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.* ("CADA"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). Upon receiving a Notice of Right to Sue from the CCRD, Larson intends to amend this Complaint to add claims under Title VII, the ADEA, and CADA, and to seek additional damages on those claims.

same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

10. The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

11. Larson is a 65-year-old woman who was employed by WWD from November 8, 1999 to July 7, 2021. Her last paycheck from WWD came on July 16, 2021.

12. Larson has a degree in accounting from Miami University and attained a Certified Employee Benefit Specialist (CEBS) designation from the Wharton School of the University of Pennsylvania.

13. As a highly skilled professional with a background in accounting and decades of experience in management, Larson was consistently able to achieve success at WWD, saving the company millions of dollars and receiving multiple promotions.

14. Larson's most recent, and final, promotion was to the position of Manager, Global Health, Welfare and Retirement Plans and Programs. She was promoted to that position on February 13, 2017 and remained in the position until she retired in July 2021.

15. Managerial employees (Managers and Directors) at WWD are generally paid an annual salary, plus bonuses and non-qualified stock options. Each employee is designated at an "incentive level," which determines the bonus percentage they will receive as well as the stock options, with higher incentive levels bringing higher percentages and more stock than the levels below them.

16. Despite Larson's skills, experience, dedication, and accomplishments, WWD consistently paid her less than younger, less experienced male managers.

17. During her employment, Larson received a lower salary and smaller bonuses than male Directors who were performing similar (or fewer) duties.

18. WWD kept Larson at incentive level 4 through the date of her retirement, while younger white male comparators who were Directors were compensated at incentive level 5 or 6.

19. Throughout the time that Larson was the Manager of Global Health, Welfare and Retirement Plans and Programs, she reported to a Director.

20. From January 2018 until the end of Larson's employment, that Director was Marsha Turner ("Turner"), Director Total Rewards.

21. Despite being labeled as a "Manager," Larson consistently performed the duties of a Director, if not two Directors, for WWD.

22. Larson was responsible for implementing benefit programs for acquisitions. She worked on health insurance, pensions, 401Ks, and other benefit plans.

23. In addition, Larson was responsible for stock option administration. She also supervised and managed five subordinates.

24. Unlike WWD Directors who had similar duties and similar numbers of subordinates, who were incentive levels 5 and 6, Larson was incentive level 4.

25. During her employment, Larson approached WWD to express concerns regarding this disparity on numerous occasions.

26. In 2018, Larson approached her supervisor, Turner, and inquired why she was not incentive level 5.

27. Turner, who was a Director at incentive level 6, claimed that Larson could not be at incentive level 5 because "level 5s are Directors, and a Director cannot report to another Director."

28. Turner also asserted that Larson could not become a Director unless Turner were promoted to Vice President.

29. Turner's assertions were belied by WWD's hiring of Erik Ammidown ("Ammidown"), as Larson's successor. WWD hired Ammidown as a Director at incentive level 5 who reported directly to Turner (another Director).

30. Larson also complained to Paul Benson, WWD Vice President, Human Resources, that she felt she was "being taken advantage of" in May 2020.

31. Mr. Benson was dismissive of Larson's complaint, and did not take any steps to correct the disparity in compensation between Larson and her comparators.

32. In late 2020, Larson announced that she would retire effective July 2021.

33. Not long after, Larson was informed by another employee that the person WWD was to hire to replace her, Ammidown, was to be a Director.

34. Larson confirmed that Ammidown would indeed be a Director, and would receive incentive level 5 compensation.

35. Ammidown was also hired with a base salary of $185,000.00 per year and a bonus opportunity of 25%, while Larson's base salary never rose above $165,000.00 per year with a bonus opportunity of 20%.

36. To Larson's knowledge, Ammidown still does not perform as many job duties as Larson did during her time as Manager, Global Health, Welfare and Retirement Plans and

Programs, and only supervises one direct subordinate.

37. Ammidown is significantly younger than Larson and a man.

38. Based on Larson's knowledge of the stock incentives granted to managerial employees at WWD and the stock prices in effect over the past three years, she believes that the disparity in her compensation related to stock options alone is at least $306,852.00.

## COUNT I

## PAY DISCRIMINATION IN VIOLATION OF THE EPA

## 29 U.S.C. § 206(d)

39. The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

40. The EPA declares:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C.A. § 206(d).

41. An employer who discriminates against an employee in violation of the EPA is liable for back wages in the amount of the disparity between the wages that were paid to the

plaintiff and the wages paid to similarly-situated male employees, liquidated damages doubling the amount of wages due, reasonable attorney's fees, and litigation costs. 29 U.S.C. § 216(b).

42. At all times relevant to this Complaint, Larson was an "employee" subject to the protections of the EPA. *See* 28 U.S.C. § 203(e)(1).

43. At all times relevant to this Complaint, WWD was an "employer" covered by the requirements and prohibitions of the EPA. *See* 28 U.S.C. § 203(d).

44. WWD violated the EPA by paying Larson less than similarly-situated male employees who performed the same job duties under similar working conditions.

45. As a result of WWD's discrimination, Larson received at least $306,852.00 less than her male comparators in stock options, a salary of approximately $20,000.00 per year less than her male comparators, and smaller bonuses than younger men who performed substantially similar duties.

46. Accordingly, the Defendant is liable for back pay, liquidated damages, reasonable attorney's fees and costs. *See* 29 U.S.C. § 216(b).

## COUNT II

### PAY DISCRIMINATION IN VIOLATION OF THE CEPEWA
### C.R.S. § 8-5-101 *et seq.*

47. The Plaintiff hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

48. Colorado's Equal Pay for Equal Work Act, C.R.S. § 8-5-101 *et seq.*, provides that "[n]o employer shall make any discrimination in the amount or rate of wages or salary paid or to

be paid his employees in any employment in this state solely on account of the sex thereof." C.R.S. § 8-5-102.

49. An employer who violates the CEPEWA may be liable for back wages in the amount of the disparity between the wages that were paid to the plaintiff and the wages paid to similarly-situated male employees, liquidated damages doubling the amount of wages due, reasonable attorney's fees, and litigation costs. C.R.S. § 8-5-104(2).

50. At all times relevant to this Complaint, Larson was an "employee" protected by the CEPEWA. *See* C.R.S. § 8-5-101(4).

51. At all times relevant to this Complaint, WWD was an "employer" required to comply with the CEPEWA. *See* C.R.S. § 8-5-101(5).

52. At all times during her employment, Larson performed work which was substantially equal to that of her male counterparts.

53. At all times during her employment, Larson performed her work under similar working conditions to those of her male counterparts.

54. WWD violated the CEPEWA by paying Larson less than similarly-situated male employees throughout her employment.

55. As such, the Corporation is liable to Larson for back wages in the amount of the pay disparity, liquidated damages doubling the amount of wages due, reasonable attorney's fees, and litigation costs. *See* C.R.S. § 8-5-104.

## PRAYER FOR RELIEF

For the reasons set forth above, the Plaintiff respectfully asks that the Court enter judgment for her and against the Defendant and award the Plaintiff:

(1) Back wages in an amount to be determined a trial;

(2) Liquidated damages in an amount equal to the wages awarded at trial;

(3) The Plaintiff's reasonable attorney's fees through the date of judgment;

(4) The Plaintiff's costs through the date of judgment;

(5) Post-judgment interest at a rate to be determined at trial; and

(6) All other and further relief as may be appropriate and just.

## JURY DEMAND

The Plaintiff demands a jury on all issues so triable.

Respectfully submitted on this 28th day of June, 2022.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ Adam M. Harrison*
Adam M. Harrison
Claire E. Hunter
HKM Employment Attorneys LLP
730 17th Street, Suite 750
Denver, Colorado 80202
aharrison@hkm.com
chunter@hkm.com

*Attorneys for Plaintiff*